IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PENELOPE T. JOHNSON, | ) | |
| Plaintiff | ) ) | Civil No. 08-1046-KI |
| v. | ) ) ) | OPINION AND ORDER |
| MICHAEL J. ASTRUE, | ) ) ) | |
| Defendant. | ) ) | |

DAVID B. LOWRY
9900 S.W. Greenburg Road
Portland, OR 97223

    Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

WILLY M. LE
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, District Judge:

Plaintiff Penelope Johnson ("Johnson") seeks judicial review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1963 (Tr. 59), Johnson has a twelfth-grade education. Tr. 57.[1] Johnson reports past work as a certified nurse's assistant between 1995 and 1999. Tr. 54. Johnson applied for SSI on October 6, 2006 (Tr. 58), alleging disability since January 1, 1998. Tr. 53. The Commissioner denied this application initially and upon reconsideration. Tr. 42-50.

An Administrative Law Judge ("ALJ") held a hearing on April 5, 2007. Tr. 372-97. On September 25, 2007, the ALJ issued an unfavorable decision. Tr. 14-21. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 4-6. Johnson presently appeals.

///

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on August 25, 2008 (Docket # 10).

2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.920(g), 416.966.

## THE ALJ'S FINDINGS

The ALJ found Johnson's hepatitis C, depression, anxiety, and methadone use "severe" when considered in combination at step two in the sequential proceedings. Tr. 16. The ALJ found that these impairments did not meet or equal a listing at step three. Tr. 17. The ALJ found Johnson and her husband "not entirely credible" regarding their reports of Johnson's symptoms. Tr. 18. The ALJ subsequently found that Johnson's RFC allowed her to perform "light work that permits mild limitations in her activities of daily living, social functioning, and concentration, persistence or pace." Tr. 17. The ALJ found that Johnson could not perform her past relevant work as a certified nurse's assistant (Tr. 20), but concluded that this RFC allowed Johnson to perform work existing in the national economy. Tr. 20. The ALJ therefore found Johnson not disabled. Tr. 21.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## ANALYSIS

Johnson challenges the ALJ's assessment of the opinions of two examining physicians, and the lay testimony. Johnson also asserts that then ALJ failed to properly apply SSR 96-8p, and made erroneous findings at step five in the sequential proceedings.

**I.     Medical Source Statements**

Johnson challenges the ALJ's assessment of examining physicians Drs. Irwin and Wicher.

**A.     Standards**

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that

of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.*, at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. Disability opinions are furthermore reserved for the Commissioner. 20 C.F.R. § 416.927(e)(1).

### B. Examining Physician Dr. Irwin

#### a. Dr. Irwin's Opinion

Internist Dr. Irwin examined Johnson for Disability Determination Services ("DDS")[2] on May 10, 2005. Tr. 268-74. Dr. Irwin assessed a history of hepatitis C, history of bipolar disorder, history of "possibly" polycythemia, poor dentition, tobacco use, past history of intravenous drug use, and history of musculoskeletal complaints. Tr. 272-73. Dr. Irwin recommended that Johnson follow up with her treating physician to rule out pregnancy, and concluded that Johnson might find an assistive device helpful, should lift no more than ten pounds frequently, and should avoid bending, stooping, or crouching. Tr. 274-73.

Johnson submitted a questionnaire created by her attorney to her attorney addressing Dr. Irwin's May 10, 2005, examination. Tr. 151-52. Here Johnson affirmed that Dr. Irwin performed various physical examinations. *Id.*

#### b. Analysis

Johnson asserts that the ALJ's reasoning is "unknown," and therefore may not be sustained.

---

[2] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

6 - OPINION AND ORDER

Pl.'s Opening Br. 12. This assertion is incorrect. The ALJ discussed Dr. Irwin's opinion. Tr. 19 (citing Ex. 9F). The ALJ first noted Dr. Irwin's report that Johnson was vague regarding her history, and that Dr. Irwin advised her to follow up with her treating physician. *Id.* The record supports these findings. Tr. 170-71. The ALJ then cited Dr. Irwin's work-related limitations, and gave "less weight" to Dr. Irwin's opinion because "treatment records show that the claimant's presentation on the day of this examination is not indicative of her condition on the whole." *Id.*

As noted, the ALJ must generally accord more weight to a treating physician's opinion than that of an examining physician. *Lester*, 81 F.3d at 831. Here the ALJ gave greater weight to the records and opinions produced by Johnson's treating physician than to Dr. Irwin's opinion. Before addressing Dr. Irwin's opinion, the ALJ discussed evidence submitted by treating physicians Drs. Blessing, McDaniel, and Janzen. Tr. 18 (citing Ex. 15F). These treating physicians documented Johnson's condition over ten office visits occurring between June 2006 and March 2007. Tr. 354-65. The ALJ's finding that this evidence better documented Johnson's condition than the opinion of Dr. Irwin is based upon the record and the proper legal standards. The ALJ's findings regarding Dr. Irwin are therefore affirmed.

    **C.**    **Examining Psychologist Dr. Wicher**

        **a.**    **Dr. Wicher's Opinion**

Psychologist Dr. Wicher evaluated Johnson for DDS on May 11, 2005. Tr. 153-57. Dr. Wicher based her evaluation upon a clinical history and examination. Tr. 153-55. Dr. Wicher assessed recurrent moderate major depressive disorder, panic disorder without agorophobia, polysubstance abuse in remission, and a GAF of 51. Tr. 156. Dr. Wicher concluded:

> The primary psychological barriers to returning Ms. Johnson to full-time, sustained employment would be her mild deficits in social functioning and moderate deficits in concentration, persistence, and pace. She is a woman who reports that she has primarily functioned as a homemaker and has worked on a very limited basis in the past. She has generally been dependent on her husband for support, and her lack of work experience, along with the other deficits described, would certainly make it more challenging for her to locate, obtain, and sustain full-time, gainful employment.

Tr. 157.

Johnson again submitted an attorney questionnaire indicating that she felt that Dr. Wicher did not give her a "thorough" examination, and that Dr. Wicher spent insufficient time questioning her. Tr. 150.

### b. Analysis

The ALJ noted Dr. Wicher's examination, and her conclusion that Johnson would have moderate limitations in concentration, persistence, and pace. Tr. 19 (citing Ex. 6F). The ALJ subsequently cited Johnson's assertion that Dr. Wicher did not perform an adequate examination, and concluded "after giving the claimant the benefit of the doubt, the undersigned gives less weight to this opinion." Tr. 19. The ALJ then gave greater weight to Johnson's treating physician's records which show that her depression and anxiety are "pretty well controlled with medication." *Id.*

Johnson again asserts that the ALJ erroneously gave greater weight to her treating physicians. Pl.'s Opening Br. 15. The record shows that Johnson's treating physicians, Drs. Blessing, McDaniel, and Janzen, noted above, did not assess limitations stemming from Johnson's depression and anxiety. Tr. 354-65. On March 3, 2007, Dr. Blessing stated that Johnson's anxiety and depression are both "pretty well controlled" with medication. Tr. 354. Previous treatment notes for the period

between June 5, 2006, and January 10, 2007, show that Johnson did not report depressive or anxious symptoms or limitations. Tr. 356-57, 259-60, 362, 364-65. During this period Drs. McDaniel and Janzen instead noted that Johnson requested multiple Klonopin[3] prescriptions and claimed to have lost her medication. Tr. 361, 363. The record thus supports the ALJ's conclusion that Johnson's depression and anxiety complaints were not documented by her treating physicians. The ALJ must ordinarily give greater weight to a treating physician's opinion, *Lester*, 81 F.3d at 831, and here the ALJ appropriately did so. The ALJ's reliance upon Johnson's treating physicians rather than examining psychologist Dr. Wicher is therefore affirmed.

## II.    Lay Witness Testimony

Johnson asserts that the ALJ inappropriately rejected testimony submitted by her husband, Steven Johnson. Pl.'s Opening Br., 10-11. The ALJ noted Steven Johnson's testimony that Johnson rarely leaves her home, except to attend medical appointments, and that if she does go to an appointment she spends the rest of the day in bed. The ALJ also noted Steven Johnson's testimony that Johnson is anxious and has additional functional limitations. Tr. 18. The ALJ rejected this testimony because, while Steven Johnson reported that he sees Johnson daily, Johnson stipulated that she separated from Steven Johnson on January 2, 2007. Tr. 18.

### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in

---

[3]Klonopin is a benzodiazepine used to treat seizure and panic disorders. *Drugs Information Online*, available at http://www.drugs.com/klonopin.html (last visited September 18, 2009).

a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give germane reasons for rejecting lay testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); see also *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009).

### B.  Analysis

Johnson specifically alleges that the ALJ failed to credit Steven Johnson's testimony that Johnson had difficulty gripping items with her hands, and that she suffered medication side effects. Pl.'s Opening Br. 17.

The record shows that Steven Johnson testified that he saw Johnson daily, and that at the time of Johnson's April 5, 2007, hearing he saw Johnson before and after he went to school each day. Tr. 384. The record also contains a September 10, 2007, fax transmission sent by Johnson's attorney to the ALJ. Tr. 371. The fax stipulates that Johnson and Steven Johnson separated on January 2, 2007. Tr. 371. While more than one plausible explanation may arise regarding a claimant's activities, this court must defer to the ALJ's interpretation where it is based upon substantial evidence. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). For this reason the court affirms the ALJ's finding that Johnson's stipulation regarding her separation from Steven Johnson discredits Steven Johnson's testimony that he saw Johnson daily. The ALJ's rejection of Steven Johnson's testimony is therefore affirmed.

## IV.  RFC Assessment and SSR 96-8p

Johnson asserts that the ALJ failed to properly follow SSR 96-8p in assessing her RFC. Pl.'s

Opening Br. 16. SSR 96-8p instructs the ALJ to consider various factors in assessing a claimant's RFC and her ability to perform regular and continuing work. SSR 96-8p at *1, *5 (available at 1996 WL 374184). Here the ALJ may consider a claimant's medical history, side effects of treatment, the claimant's testimony, and lay evidence. *Id.* at *5.

Johnson first asserts that the ALJ did not consider the opinions of Drs. Irwin and Wicher. Pl.'s Opening Br. 16. The ALJ's findings regarding Drs. Irwin and Wicher are affirmed for the reasons above and will not be discussed again.

Johnson next asserts that the ALJ failed to assess limitations due to her back impairment. *Id.* Here Johnson cites a June 16, 2004, MRI examination and Dr. Irwin's "diagnosis of nerve compression of L5-S1." *Id.* at 16-17. Johnson's initial application made no allegation of disability due to a back impairment. Tr. 53. At her hearing, Johnson testified that she could not lift more than ten pounds because "I'm just not strong enough" due to an unidentified back impairment. Because the ALJ found Johnson not credible (Tr. 18), he did not incorporate such a lifting restriction into Johnson's RFC. Here the court notes that Johnson does not challenge the ALJ's credibility determination. The ALJ's failure to include this limitation in Johnson's RFC is therefore affirmed.

Regarding Dr. Irwin's finding, the record shows that Dr. Irwin wrote that Johnson "has been known to have a positive MRI in the past for some nerve root compression of L5-S1. She was noted on exam today to have decreased range of motion in her back." Tr. 273. This citation does not show that Dr. Irwin "diagnosed" a "nerve compression." For all these reasons, the ALJ made no error in omitting Johnson's back impairment from her RFC.

Johnson subsequently asserts that the ALJ should have considered her alleged functional

limitations due to "increased abdominal proturbance" and difficulty gripping due to her alleged carpal tunnel syndrome. Pl.'s Opening Br. 17. Johnson points to no work-related limitations related to her abdominal stature. Regarding her gripping ability, Johnson points to Steven Johnson's testimony that "her hands are swollen and when she picks up a cup of coffee, you can tell where she sits because there is a giant stain there." Tr. 386. This testimony does not establish limitations in gripping. Further, the ALJ properly discarded Steven Johnson's testimony, for the reasons above. Johnson herself testified that she has difficulty holding objects, but she does not presently cite this testimony, and, as noted, Johnson does not challenge the ALJ's credibility determination. Johnson's assertion that the ALJ should have considered her alleged gripping limitations is therefore without merit.

Finally, Johnson asserts that the ALJ should have considered her medication side effects in assessing her RFC under SSR 96-8p. The Commissioner's Ruling instructs the ALJ to consider the effects of "relevant evidence" in the case record, including medication side effects. SSR 96-8p at *5 (available at 1996 WL 374184). Here Johnson cites Steven Johnson's testimony that her methadone makes her "groggy and tired." Pl.'s Opening Br. 17 (citing Tr. 388). The court again notes that, because the ALJ properly discredited Steven Johnson's testimony, this argument is also without merit.

In summary, Johnson fails to show that the ALJ made any reversible error under SSR 96-8p.

## V.  The ALJ's Step Five Findings

Johnson challenges the ALJ's findings at step five of the sequential proceedings. Johnson specifically alleges that the ALJ failed to include all of her limitations in his questions to the

vocational expert. Pl.'s Opening Br. 17.

The ALJ's questions to the vocational expert must include limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Johnson fails to show that the ALJ omitted such limitations from her RFC. The ALJ therefore submitted a proper hypothetical question to the vocational expert. In response, the vocational expert stated that an individual with Johnson's RFC assessment could perform work in the national economy as a cleaner and polisher, small products assembler, booth cashier, and mail clerk. Tr. 390-91. The ALJ's finding that Johnson could perform such work is therefore based upon substantial evidence and is affirmed.

## CONCLUSION

The Commissioner's decision that Johnson did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this ____21st____ day of September, 2009.

                                                    /s/ Garr M. King
                                                    Garr M. King
                                                    United States District Judge